[Cite as *In re K.R.*, 2012-Ohio-5212.]

## IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

|                  |   |                                                      |
|------------------|---|------------------------------------------------------|
|                  | : |                                                      |
| IN RE: K.R.      |   |                                                      |
|                  | : | C.A. CASE NO. 25141                                  |
|                  | : | T.C. CASE NO. JC 2009-8682                           |
|                  | : | (Appeal from Common Pleas     Court - Juvenile Division) |
|                  | : |                                                      |
|                  | : |                                                      |

· · · · · · · · ·

## O P I N I O N

Rendered on the 9th day of November, 2012.

· · · · · · · · ·

**Mathias H. Heck, Jr., Prosecuting Attorney, by R. Lynn Nothstine, Assistant Prosecuting Attorney, Atty. Reg. No. 0061560, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422**
**Attorney for Appellee, State of Ohio**

**Andrea M. Seielstad, Atty. Reg. No. 0066227, 300 College Park, Dayton, Ohio 45469**
**Attorney for Appellant, Minor Child**

· · · · · · · · ·

**GRADY, P.J.:**

{¶ 1}   K.R., a minor child, appeals from his delinquency adjudication and disposition for having committed attempted breaking and entering, R.C. 2911.13 and 2923.02(A), a misdemeanor of the first degree had it been committed by an adult.

{¶ 2}   Shortly before 4:00 a.m. on September 26, 2009, police responded to an alarm sounding at the back door of the Smoker's Outpost.   The officers observed signs of a forced entry at the outer door, which had been pried open.   The inner door remained secure.   The officers found part of a broken screwdriver on the ground by the back door.

{¶ 3}   In the meantime, another officer was driving around the neighborhood of the Smoker's Outpost.   Behind the business is an open field, on the far side of which the officer saw 16-year-old K.R. and his eighteen-year-old friend, Donald George.   Upon seeing the cruiser, K.R. and George ran.   K.R. responded to the command to stop while George continued to run, but was eventually stopped.   K.R. and George were handcuffed, placed in cruisers, and returned to the Smoker's Outpost.   Police found a piece of screwdriver across the street from where K.R. and George were first seen.

{¶ 4}   K.R. was questioned by Officer Doyle, who knew K.R. and his family.   Prior to the questioning, Officer Doyle read K.R. his *Miranda* rights.   Initially, K.R. was hesitant to talk to Officer Doyle because he did not want to be thought of as a "snitch."   Officer Doyle advised K.R. that he was being recorded and that anything K.R. said would be revealed in the officer's report, but Officer Doyle said he would not directly tell George anything K.R. said.

{¶ 5}   K.R. told Officer Doyle that George complained about needing money that night.   Shortly after that conversation, George used a screwdriver that he was carrying to try to pry open the back door of the Smoker's Outpost.   As George pried at the door, K.R. watched for the police.   K.R. told George, "we shouldn't do this."   But, George only responded by telling K.R. again that he wanted money.   When the young men heard the alarm sound, they ran away.

**{¶ 6}** Not only did K.R. confess his involvement in the crime to Officer Doyle, but K.R. later admitted to one of his teachers that he missed school because he had to go to court as a result of his attempt to break into a tobacco shop, which came about because his friend wanted money.

**{¶ 7}** On the day of K.R.'s arrest, a complaint was filed in juvenile court charging him with being delinquent by reason of having committed obstruction of official business and attempted breaking and entering.

**{¶ 8}** K.R. filed a motion challenging his competency to stand trial. At the competency hearing, the State presented the testimony of the court's psychologist, Dr. Laura Fujimura, who was of the opinion that K.R. was competent. K.R. called as his own expert, Dr. Michael Firmin, who opined that K.R. was not competent. In rebuttal, the State called two of K.R.'s teachers to testify. The magistrate found K.R. competent to stand trial.

**{¶ 9}** K.R. next filed a motion to suppress the incriminating statements he made to the police. Following a hearing, the trial court overruled the motion.

**{¶ 10}** The case proceeded to an adjudicatory hearing in August 2010. The magistrate found K.R. responsible for the attempted breaking and entering charge but not responsible for the obstruction of official business charge. The magistrate proceeded to disposition and ordered K.R. to complete 16 hours of community service, 90 days of probation, and three suspended days of juvenile corrections time.

**{¶ 11}** K.R. objected to the decision of the magistrate. After a transcript had been prepared, K.R. filed supplemental objections and a motion to dismiss the complaint pursuant to Juv.R. 29(F)(2)(d). On March 13, 2012, the trial court vacated the dispositional order with

regard to the community service and probation, but adopted the magistrate's decision in all other regards.   The trial court also denied K.R.'s motion to dismiss.

{¶ 12} K.R. appeals from the juvenile court's decision, raising four assignments of error.

{¶ 13} K.R.'s first assignment of error:

"THE TRIAL COURT ERRED IN ADJUDICATING K.R. COMPETENT TO STAND TRIAL IN THE FACE OF OVERWHELMING AND SUBSTANTIALLY UNCONTROVERTED FORENSIC EVIDENCE DOCUMENTING SIGNIFICANT COGNITIVE IMPAIRMENT AND LOW ADAPTIVE BEHAVIOR FUNCTIONING."

{¶ 14} The essence of K.R.'s claim is that the trial court's finding of competence is against the manifest weight of the evidence because the State's psychologist was not as credible as his own psychologist.

{¶ 15} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive.  *State v. Hufnagle,* 2d Dist. Montgomery No. 15563, 1996 WL 501470 (Sept. 6, 1996).   The proper test to apply to that inquiry is the one set forth in *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717   (1st Dist.1983):

> The court, reviewing the entire record, weighs the evidence and all
> reasonable inferences, considers the credibility of witnesses and
> determines whether in resolving conflicts in the evidence, the jury lost its
> way and created such a manifest miscarriage of justice that the conviction

must be reversed and a new trial ordered. Accord, *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

{¶ 16} "Pursuant to R.C. 2945.37(G), a defendant is presumed to be competent unless it is demonstrated by a preponderance of the evidence that he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense." *In re Bailey,* 150 Ohio App.3d 664, 2002-Ohio-6792, 782 N.E.2d 1177 (2d Dist.), ¶ 11. The same standard is applicable to juveniles, so long as it is applied in light of juvenile, rather than adult norms. *Id.*

{¶ 17} Dr. Fujimura testified on behalf of the State at the competency hearing. She explained that K.R. had prior personal experience with the juvenile court system as a result of a theft of his grandmother's car when he was 13 years old. He also had some awareness of the legal system due to the involvement of his mother, his step-father, and his younger sister in the court system.

{¶ 18} Dr. Fujimura testified that K.R. understood the nature of the charges against him. For example, he explained that he was accused of trying to go "into somebody's business without the owner's permission." When asked how one might commit this crime, he replied, "Take the door handle off with a screwdriver." He said that an attempt meant that someone "tried to do something." Regarding the charge of obstructing official business, K.R. described it as "trying to make the cops' job hard."

{¶ 19} Dr. Fujimura testified that K.R. understood that there are varying degrees of crimes, with varying degrees of punishment. He was able to identify the roles of the magistrate or judge, the prosecutor, the defense attorney, and a probation officer. K.R.

explained the difference between guilty and not guilty pleas, and he knew that he had a right to a trial.

{¶ 20} After additional charges of truancy were filed against K.R., Dr. Fujimura believed that a second interview would have been helpful in her assessment of K.R.'s competency, and she scheduled an appointment with the family. However, K.R.'s attorney contacted Dr. Fujimura and told her that she had advised K.R. and his family not to attend the second appointment, which as a result of counsel's questionable advice, never took place.

{¶ 21} Based on all of the information available to her, Dr. Fujimura was of the opinion that K.R. had the ability to assist his attorney with his own defense, to provide his attorney with information, and to accept his attorney's advice. She concluded that to a reasonable degree of psychological certainty that [K.R.] "does have a sufficient understanding of the legal system, the roles of the courtroom participants, and he could, if he so chose, * * * be able to explain the case events."

{¶ 22} In contrast, the defense psychologist, Dr. Firmin, opined that K.R. was not competent to stand trial because he did not have sufficient understanding of the legal system, could not assist in his own defense, and could not be restored to competency. Dr. Firmin conceded that he had not interviewed K.R. personally with respect to his prior experience with the juvenile court, and that much of the information upon which Dr. Firmin relied came from K.R.'s mother rather than from K.R. himself.

{¶ 23} Dr. Firmin discounted 2002 testing that indicated K.R. was of borderline intelligence, meaning an IQ of 70-85, in favor of 2005 testing that demonstrated a full scale Intelligence Quotient of 57, placing K.R.'s functioning in the range of mild retardation.

Despite acknowledging that K.R. drives, smokes, asks questions about sex, and steals or helps others to steal in contexts other than the factual basis for the attempted breaking and entering, Dr. Firmin insisted that K.R. had the functional equivalent of a three-year-old.

{¶ 24} On rebuttal, the State presented testimony from two of K.R.'s teachers, both of whom are intervention specialists who have experience working with K.R. on a daily basis. Other than attendance problems, both spoke positively of K.R. and his participation in his classes, despite his intellectual limitations.

{¶ 25} K.R.'s IEP advisor disagreed with the view that K.R. functioned at the level of a three-year-old. She explained that K.R.'s most recent testing indicated that he could have an IQ as high as 67. K.R. does well in his vocational class and has no problem following and understanding directions. Additionally, K.R. performs well in academic classes taught at second-grade and third-grade levels.

{¶ 26} K.R. also relies on the court's internal Dispositional Investigation Report (DIR). A DIR is prepared by a court employee as part of the detention center's intake procedure, for the limited purpose of aiding the court in determining an appropriate disposition, should the juvenile be found responsible.

{¶ 27} The magistrate quashed K.R.'s subpoena for the testimony of the employee who prepared the DIR, because Juv.R. 32(B) does not permit such testimony. However, the magistrate did allow K.R.'s counsel an opportunity to review the report, which was part of the trial court's record. K.R. elected not to file a motion to set aside the magistrate's order quashing the subpoena under Juv.R. 40(D)(2)(b), nor did he object to the magistrate's

decision to quash under Juv.R. 40(D)(3)(b). Therefore, the validity of the trial court's decision in that regard is not before us.

{¶ 28} In any event, we granted K.R.'s motion to supplement the appellate record with a sealed copy of the DIR, and we have reviewed it. We find the DIR of little persuasive value with regard to K.R.'s competency, as it was prepared by a lay person rather than a trained psychologist, for the limited purpose of disposition. To the contrary, we find the reports and testimony of the two expert witnesses to be far more relevant to the issue of K.R.'s competency.

{¶ 29} After considering the reports and the testimony of all of the witnesses, the trial court found K.R. competent to stand trial. The court explained that K.R. has a "limited, yet reasonable, understanding of the charges against him, the consequences of a conviction, and the manner in which the system operates. * * * [K.R. is] reasonably capable of meaningfully assisting in his defense."

{¶ 30} Contrary to K.R.'s assertions, this clearly is a case where two qualified expert witnesses gave conflicting findings regarding his competency. The trial court's decision rested on its determination of the credibility of the two witnesses.

{¶ 31} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). In *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997), we observed:

> Because the factfinder * * * has the opportunity to see and hear the
> witnesses, the cautious exercise of the discretionary power of a court of

appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.

{¶ 32} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. *State v. Bradley,* 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 33} All persons are presumed to be competent, although that presumption may be rebutted. R.C. 2945.37(G). The trial court found that evidence that K.R. presented failed to rebut the presumption of his competence. Furthermore, the testimony of the State's psychologist, if believed, presents a basis for the trial court's finding that K.R. is competent. Based on the record before us, we conclude that the trial court did not abuse its discretion in finding K.R. competent.

{¶ 34} The first assignment of error is overruled.

{¶ 35} K.R.'s second assignment of error:

"THE TRIAL COURT ERRED IN FAILING TO SUPPRESS STATEMENTS MADE BY K.R. WHILE IN POLICE CUSTODY."

{¶ 36} When considering a motion to suppress, the trial court assumes the role of the trier of facts and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses. *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850

N.E.2d 1168.  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  *Id.*  Accepting those facts as true, the appellate court must then independently determine, without deference to the trial court's conclusion, whether those facts satisfy the applicable legal standard.  *Id.*

{¶ 37} K.R. argues that his incriminating statements should have been suppressed because his limited mental capacity prevented him from understanding the *Miranda* warnings he was given and caused him to be coerced into making incriminating statements.  As we explained in response to K.R.'s first assignment of error, the trial court's finding of competency is not against the manifest weight of the evidence.  For the reasons explained above, we reject K.R.'s claims that he did not understand the *Miranda* warnings and that he was coerced into making incriminating statements based upon his limited intellectual capacity.

{¶ 38} K.R. also insists that Officer Doyle did not properly administer the *Miranda* warnings, as evidenced by the truncated warnings captured on the cruiser's videotape.  It is true that the videotape did not record a thorough-enough discussion of the *Miranda* warnings.  However, Officer Doyle explained that most of his conversation with K.R. regarding those warnings had not been recorded, and that only a brief recapping those warnings was recorded.

{¶ 39} Officer Doyle testified at length concerning how he gave K.R. the complete *Miranda* warnings.  Officer Doyle said that he read the rights to K.R. directly from a laminated card that he carries for such a purpose.  Officer Doyle also offered brief explanations of those rights to the juvenile and responded to questions that K.R. asked about his rights.  Officer Doyle even advised K.R. that he did not have to talk to the police without

the presence of a parent.   At the conclusion, K.R. told Officer Doyle that he understood each of the warnings.

**{¶ 40}** Officer Doyle's testimony, if believed by the trial court, was sufficient to warrant the court's decision overruling K.R.'s motion to suppress the incriminating statements that he made to the police.

**{¶ 41}** K.R.'s second assignment of error is overruled.

**{¶ 42}** K.R.'s third assignment of error:

"THERE IS INSUFFICIENT EVIDENCE ESTABLISHING THAT K.R. ATTEMPTED BY FORCE, STEALTH, OR DECEPTION TO TRESPASS IN THE SMOKER'S OUTPOST WITH THE PURPOSE TO COMMIT THEREIN ANY THEFT OR FELONY IN VIOLATION OF O.R.C. §2913.01."

**{¶ 43}** A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law.   *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).   The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991):

> An appellate court's function when reviewing the sufficiency of
>
> the evidence to support a criminal conviction is to examine the
>
> evidence admitted at trial to determine whether such evidence, if
>
> believed, would convince the average mind of the defendant's
>
> guilt beyond a reasonable doubt.   The relevant inquiry is
>
> whether, after viewing the evidence in a light   most favorable to

the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

{¶ 44} K.R. was found responsible for attempted breaking and entering in violation of R.C. 2911.13(A), which states: "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony."

{¶ 45} K.R. admitted that during the early morning hours of September 26, 2009, George, his companion, complained to K.R. that he needed money. George then tried to force open the door of the Smoker's Outpost. As George pried at the door, K.R. told him, "we shouldn't do this." George only responded by telling K.R. again that he wanted money.

{¶ 46} The owner of the Smoker's Outpost testified that he did not know K.R. or George and did not give them permission to enter his business. Additionally, the owner explained that there was a significant amount of merchandise in the store that could have been stolen had the young men not been scared away by the alarm.

{¶ 47} When the police responded to the alarm, they observed signs of forcible entry at the back door, with one of the two rear doors ajar. They found a broken screwdriver nearby on the ground. Shortly after the alarm sounded at the Smoker's Outpost, K.R. and George were found across a field behind the business. Another piece of broken screwdriver was found across the street from them.

{¶ 48} Not only did K.R. confess his involvement in the attempted breaking and entering to Officer Doyle, but he also admitted his involvement to one of his teachers. Specifically, K.R. told her that he missed school and had to go to court because "he had attempted to break and enter a tobacco shop." (Tr. 123).

{¶ 49} Finally, to the extent that K.R. argues that neither he nor George actually entered the business in question, we note that this is the reason that K.R. was charged with *attempted* breaking and entering. An attempt means that a person has "engage[d] in conduct, that if successful, would constitute or result in the offense." R.C. 2923.02(A).

{¶ 50} All of these factors taken together, and viewed in a light most favorable to the State, support the trial court's conclusion that the State offered sufficient evidence to prove beyond a reasonable doubt that K.R. was responsible for attempted breaking and entering.

{¶ 51} The third assignment of error is overruled.

{¶ 52} K.R.'s fourth assignment of error:

"THE TRIAL COURT ERRED IN ORDERING K.R. TO CORRECTIONS TIME YEARS AFTER THE INCIDENT AND ORIGINAL MAGISTRATE'S DECISION WITHOUT FINDING THAT IT WAS IN THE BEST INTERESTS OF THE CHILD OR THE COMMUNITY."

{¶ 53} Along with his objections to the magistrate's decision, K.R. filed a motion to dismiss pursuant to Juv.R. 29(F)(2)(d), which authorizes the court to dismiss a complaint if dismissal is in the best interest of the child and the community. K.R. argues on appeal that "[t]he trial court abused its discretion in summarily denying K.R.'s motion to dismiss and

entering an order of suspended corrections time without making findings related to the child's best interest and that of the community."

**{¶ 54}** However, K.R. did not request findings of fact and conclusions of law as permitted by Juv.R. 29(F)(3). Therefore, the trial court was not required to make those findings to support its denial of K.R.'s motion to dismiss.

**{¶ 55}** K.R.'s fourth assignment of error is overruled.

**{¶ 56}** K.R.'s assignments of error having been overruled, the judgment of the trial court is affirmed.

Fain, J., and Hall, J., concur.

Copies mailed to:

R. Lynn Nothstine, Esq.
Andrea M. Seielstad, Esq.
Hon. Nick Kuntz